**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE No. 17-cv-62578-BLOOM/Valle**

AIG PROPERTY CASUALTY COMPANY,

      Plaintiff,

vs.

BRADFORD MARINE INC.,

      Defendant/Third-Party Plaintiff,

vs.

FLORIDA MARINE PROPULSION CORP.
d/b/a Lauderdale Propeller Service,

      Third-Party Defendant.

_____/

## ORDER ON MOTION TO DISMISS

**THIS CAUSE** is before the Court upon Third-Party Defendant Florida Marine Propulsion Corp.'s ("Florida Marine") Motion to Dismiss for Failure to State a Cause of Action or alternatively, Motion for More Definite Statement, ECF No. [30] ("Motion"). The Court has carefully reviewed the Motion, all opposing and supporting materials, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is granted**.**

## I. BACKGROUND

Plaintiff, AIG Property Casualty Company ("AIG"), filed this action as subrogee of its insured Pissaro Properties, Ltd. ("Pissaro"). *See* ECF No. [1]. In the Complaint, AIG alleged that Pissaro engaged Defendant/Third-Party Plaintiff, Bradford Marine, Inc. ("Bradford Marine") to repair the M/Y Francine, entering into a Dockage and Repair Contract. *Id.* at ¶ 8. Thereafter,

Bradford Marine sent the propeller to be inspected by Florida Marine, which sent an email stating, in part, that the propeller blades were badly bent and "the propeller will never be right again." *Id.* at ¶ 9. Florida Marine stated it would scan the propeller to determine whether a matching set can be made. *Id.* According to the Complaint, Bradford Marine thereafter presented Pissaro with a written proposal to supply a new propeller with an approximate delivery six weeks from the date of the order, which Pissaro accepted. *Id.* at ¶ 10-11. The first propeller delivered was allegedly different from the original one and could not be used. *Id.* at ¶ 12. The second replacement propeller was also allegedly of an incorrect size. *Id.* at ¶ 13. Finally, a third propeller was delivered and fitted onto the vessel in December of 2016. *Id.* at ¶ 14. However, Bradford Marine was allegedly required to supply the replacement vessel six months earlier in July of 2016. *Id.* at ¶ 15. AIG, as subrogee, seeks to recover the amount of the claim it paid its insured due to the delayed propeller delivery. *Id.* at ¶ 16.

In response to the Complaint, Bradford Marine filed an Answer and Affirmative Defenses along with a Third-Party Complaint against Florida Marine. *See* ECF No. [5]. The Third-Party Complaint alleges that it is "an action for indemnity in an amount not less than $248,291.07 plus prejudgment interest, costs, and such other relief as is appropriate under the circumstances." *Id.* at ¶ 3. Consistent with the allegations of the Complaint, the Third-Party Complaint alleges that, on December 30, 2016, Bradford Marine contracted with Pissaro to repair and replace the vessel's port-side propeller and shaft, and once these were removed from the vessel, they were sent to Florida Marine. *Id.* at ¶ 5. Florida Marine thereafter reported to Bradford Marine and Pissaro that neither the propeller nor the shaft could be repaired, recommending they order new ones. *Id.* Pissaro, in turn, agreed to have a new propeller and shaft manufactured and Florida Marine was notified of this decision. *Id.* at ¶ 6. The order was

placed and Pissaro was informed that it would take six weeks to complete the fabrication. *Id.* At this point, the Third-Party Complaint alleges that Florida Marine prepared specifications for fabrication of the new propeller and provided these to non-party CJR Propulsion ("CJR") in the United Kingdom. *Id.* Upon the delivery of the propeller and shaft, it was discovered that they could not be used because the "cord was off and the pitch was higher than that of the damaged propeller." *Id.* at ¶ 7. According to the Third-Party Complaint, Pissaro and Florida Marine thereafter worked directly with each other to order a second propeller based upon scans Florida Marine provided to CJR. *Id.* at ¶ 8. The second propeller was not usable either, so Pissaro, Florida Marine, and CJR agreed that CJR would fabricate a third propeller. *Id.* at ¶ 9. The third one, delivered in mid-to-late November of 2016, was suitable for installation on the vessel. *Id.*

Based on these allegations, Bradford alleges that "if it is held liable to AIG, it is entitled to indemnification and/or contribution from Lauderdale Propeller [Florida Marine] for its negligence in preparing and providing the necessary specifications and other information to CJR resulting in the fabrication of a total of three propellers and the delay attendant to the required fabrication of them." *Id.* at ¶ 10. Bradford Marine further alleges that its right to indemnity and/or contribution arises from Florida Marine's (1) negligence in providing proper information to CJR resulting in the fabrication of the first propeller, (2) negligence in the preparation of scans and specifications provided to CJR resulting in the fabrication of the second propeller, and (3) negligence in the supervision of CJR such that two incorrect propellers were fabricated, causing a twelve-to-fourteen-week delay to the vessel's repair. *Id.* at ¶ 11.

In response to the Third-Party Complaint, Florida Marine seeks dismissal of the indemnity and contribution claims or alternatively requests a more definite statement. *See* ECF

No. [30].  Bradford Marine's Memorandum of Law in Opposition and Florida Marine's Reply timely followed.  *See* ECF Nos. [33] and [35].  The Motion is now ripe for adjudication.

## II.     LEGAL STANDARD

### a.  Motion to Dismiss

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation").  Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)).

When reviewing a motion under Rule 12(b)(6), a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff.  *See Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009).  However, this tenet does not apply to legal conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation."  *Twombly*, 550 U.S. at 555; *see Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006).  Moreover, "courts may infer from the factual allegations in the complaint 'obvious alternative explanations,' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental*

*Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 682). A court considering a Rule 12(b) motion is generally limited to the facts contained in the complaint and attached exhibits, including documents referred to in the complaint that are central to the claim. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009); *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity.") (citing *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002)).

### b. Motion for a More Definite Statement

Under Rule 12(e) of the Federal Rules of Civil Procedure, "a party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). Since courts have liberally construed the pleading standard under Rule 8(a), "a short and plain statement" will be enough, unless upon motion it is shown that the pleading "is so ambiguous that a party cannot reasonably" respond. *Betancourt v. Marine Cargo Mgm't, Inc.*, 930 F. Supp. 606, 608 (S.D. Fla. 1996). "Most courts disfavor the use of Rule 12(e)," and "motions for a more definite statement should not be used as a means of discovery." *Royal Shell Vacations, Inc. v. Scheyndel*, 233 F.R.D 629, 630 (M.D. Fla. 2005).

### III. DISCUSSION

Florida Marine seeks to dismiss the Third-Party Complaint for indemnity and contribution under Florida law. *See* ECF No. [30]. More specifically, Florida Marine argues that, under Florida law, a common-law claim for indemnity requires allegations establishing that (1) the plaintiff is wholly without fault while the defendant is at fault for the underlying claim of negligence and (2) that a special relationship exists between the plaintiff and the defendant. *Id.*

at 4-5. Because the Third-Party Complaint does not contain such allegations, Florida Marine seeks dismissal. *Id.* As to contribution, Florida Marine argues that, under Florida law, a party may not file a claim for contribution unless it has paid more than its pro rata share of common liability or has had judgment entered against it – neither of which are alleged here. *Id.* at 7.

In response, Bradford Marine argues that Florida law does not apply to the claims asserted in the Third-Party Complaint because "[t]he action pending before this court is an action sounding within the court's admiralty and maritime jurisdiction, 28 U.S.C. § 1333. . ." ECF No. [33] at 2. In further support of its argument, Bradford Marine states that "[s]ince this case involves maritime contracts, a written one between AIG's insured and [Bradford Marine] and oral one between [Bradford Marine] and [Florida Marine], substantive maritime law applies to this action." *Id.* Under maritime law, it is Bradford Marine's position that the oral contract between Bradford Marine and Florida Marine contains an implied promise by Florida Marine to perform the work in a diligent and workmanlike manner and it is the breach of this promise that gives rise to a claim for indemnity. *Id.* at 4. In its Reply, Florida Marine does not dispute that the claims may be subject to maritime law but instead expresses confusion as to whether Bradford Marine is asserting claims for indemnity, contribution, breach of contract, negligence or breach of implied warranty of workmanlike performance. *See* ECF No. [35] at 3. For that reason, it asks the Court to dismiss the Third-Party Complaint without prejudice or to require a more definite statement that clearly articulates the claims are at issue with facts supporting each individual claim. *Id.* at 3-4.

The Court agrees that dismissal with leave to amend is warranted as Bradford Marine has failed to state a claim. Starting with Bradford Marine's position that this action arises under the Court's admiralty and maritime jurisdiction, nowhere in the Third-Party Complaint does

Bradford Marine assert the basis for the Court's subject-matter jurisdiction over the indemnity and contribution claims, much less any affirmative assertion that maritime law applies. *See* ECF No. [5]. Further, although AIG's Complaint alleges in paragraph 3 that the Court has admiralty jurisdiction pursuant to 28 U.S.C. § 1333, Bradford Marine *denied* this allegation in its Answer and Affirmative Defenses and Third-Party Complaint. *See* ECF No. [1] at ¶ 3; ECF No. [5] at 1.[1] This pleading, therefore, fails to provide notice of Bradford Marine's invocation of the Court's admiralty jurisdiction or maritime law.

In addition, Bradford Marine states that its claim for indemnity and contribution is premised upon an oral contract between itself and Florida Marine. In support of this argument, it correctly argues that "[a] contract to repair a vessel invokes admiralty jurisdiction" and that oral contracts are regarded as valid under maritime law. *Diesel "Repower", Inc. v. Islander Investments Ltd.*, 271 F.3d 1318, 1322–23 (11th Cir. 2001); *Kossick v. United Fruit Co.*, 365 U.S. 731, 734 (1961). However, within the four corners of the Third-Party Complaint, there is no information about the nature of the relationship between these two entities, much less an allegation that they entered into an oral contract or what that oral contract entailed. In making this argument, Bradford Marine assumes un-pled facts. The Court cannot go outside the four corners of the Third-Party Complaint on a motion to dismiss.

Bradford Marine then argues that, within the unpled oral agreement, there was an implied promise by Florida Marine to perform the contracted work in a diligent and workmanlike manner. Bradford Marine is again correct in stating that a repair contract includes an implied warranty that such work will be performed in a workmanlike manner and that a breach of this

---

[1] In its Answer, Bradford Marine admitted paragraphs 2, 5, 6, 7, 8, 9, 12, 13, and 14 and stated it is without knowledge as to the allegations in paragraphs 2 and 4. *See* ECF No. [5]. According to the Answer, "[a]ll allegations of the three count Complaint not specifically admitted herein are denied." *Id.* Because paragraph 3 of the Complaint invoking admiralty jurisdiction was not specifically admitted, Bradford Marine denied it.

warranty gives rise to a claim for indemnity. *See Am. Exp. Lines v. Norfolk Shipbuilding & Drydock Corp.*, 336 F.2d 525, 526 (4th Cir. 1964). However, this argument again assumes that Bradford Marine pled the existence of such a repair contract, the existence of such an implied warranty, or the breach of such an implied warranty. None of these facts are pled. Apparently recognizing this shortcoming, Bradford Marine argues that paragraph 10 of the Third-Party Complaint sets out the breach of the warranty of workmanlike performance claim and that "the use of the work 'negligence' in paragraph 10 does not change the fact that the gravamen of the Third Party Complaint is breach of the warranty of workmanlike performance on the part of [Florida Marine]." ECF No. [33] at 5. Again, paragraph 10 makes no mention of a contract, the implied warranty, the breach of the warranty, or that the right to indemnity stems from this alleged breach. For these reasons, Bradford Marine will be required to file an amended pleading that properly pleads the elements of an indemnity claim under maritime law arising from the breach of the warranty of workmanlike performance.

With regard to the claim for contribution, the Court cannot discern the basis for this claim as it appears to be pled interchangeably with the claim for indemnity even though the two are distinct. *See* ECF No. [5] at ¶ 10 (Bradford Marine "is entitled to indemnification and/or contribution . . ."); ¶ 11 ("Bradford is entitled to indemnity and/or contribution from Third Party Defendant . . ."). In its response, Bradford Marine does not address its contribution claim other than to say that Florida Marine's reliance on Florida contribution law is misplaced. *See* ECF No. [33] at 5. To the extent that Bradford Marine seeks to allege a separate claim for contribution under maritime law in its amended pleading, it shall separately plead that claim along with the

facts supporting its claim for contribution. *See* Fed. R. Civ. P. 8(a). Bradford Marine's Third-Party Complaint is, therefore, due to be dismissed without prejudice.[2]

### IV. CONCLUSION

For the reasons stated herein, it is **ORDERED AND ADJUDGED** as follows:

1. Third-Party Defendant Florida Marine Propulsion Corp.'s Motion to Dismiss for Failure to State a Cause of Action, or alternatively, Motion for More Definite Statement, **ECF No. [30]**, is **GRANTED**.

2. The Third-Party Complaint, **ECF No. [5]**, is **DISMISSED WITHOUT PREJUDICE**.

3. Third-Party Plaintiff Bradford Marine, Inc. shall file its Amended Third-Party Complaint no later than **May 26, 2018**.

**DONE AND ORDERED** in Miami, Florida, this 14th day of May, 2018.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

---

[2] Because the Court has granted the Motion to Dismiss, it need not reach the alternative request for a more definite statement.